UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
SUPERIOR STEEL STUDS, INC. and
ACTION STEEL CORP.,
                      Plaintiffs,

            v.

ZURICH NORTH AMERICA, INC. and
MARYLAND CASUALTY COMPANY,
                      Defendants.
---------------------------------------------------x

MEMORANDUM
AND ORDER

04-CV-2784 (ILG)

GLASSER, United States District Judge:

This action involves the application of an exclusion clause in the insurance contract (the "Policy") between the parties. Plaintiffs Superior Steel Studs, Inc. ("Superior Steel") and Action Steel Corp. ("Action Steel") (collectively, "plaintiffs") assert a cause of action for breach of the Policy against Zurich North America, Inc. and Maryland Casualty Company (collectively, "defendants"). Pending before the Court is defendants' motion for summary judgment.

## **FACTS**

The following facts are undisputed unless otherwise noted. Plaintiffs are engaged in the business of distributing steel to end users and other distributors. See Affirmation of Lewis Tesser ("Tesser Aff.") ¶ 3. In connection with that activity, plaintiffs do business with steel processing companies. Those companies store plaintiffs' steel, maintain inventories of the stored steel and, upon receiving instructions from plaintiffs, process orders from those inventories. Compl. ¶¶ 11-12. Plaintiffs used R&R Metals, Inc. ("R&R"), a Florida steel processing company, to maintain an inventory of steel plaintiffs owned for processing orders and to occasionally ship steel to plaintiffs'

1

customers. Tesser Aff. ¶ 5. In or about June 2002, plaintiffs requested that R&R process certain steel coils it was storing for them and were told by R&R that those steel coils were missing from the R&R site. Id.; Compl. ¶ 18. Plaintiffs then hired an investigative firm, Decision Strategies, to conduct an investigation into the disappearance of the steel. The Investigation Report containing the investigator's findings indicated, among other things, that Robert O'Neil ("O'Neil") and Henry Valdivia ("Valdivia"), the President and sole shareholder and Chief Operating Manager of R&R, respectively, acknowledged responsibility for the loss of the steel. See Affidavit of Gil M. Coogler ("Coogler Aff.") Ex. I. Despite plaintiffs' demands, R&R refused to return the steel coils or pay them the fair market value of the coils, $454,738.89. Compl. ¶ 24; Tesser Aff. ¶ 5.

Thereafter, plaintiffs submitted to defendant insurance companies[1] a claim for their loss under the all-risk policy number CMM 40123430, which was in effect at the time of the loss. Compl. ¶ 6. That policy excluded from coverage loss caused by a "[d]ishonest or criminal act by you ... or anyone to whom you entrust the property for any purpose." On or about November 7, 2003, defendants denied plaintiffs' claim citing that entrustment exclusion. See Coogler Aff. Ex. B; Tesser Aff. ¶ 6; Def. 56.1 Statement ¶ 5.

On May 28, 2004, plaintiffs[2] brought an action against R&R in the federal court

---

[1] Defendants assert that Maryland Casualty Company issued plaintiffs' policy and therefore is the proper party to this action. See Coogler Aff. at 1 n.1. By contrast, Zurich North America, Inc. is merely a "trade style" that has been employed by Maryland Casualty Company and is neither a legal entity nor the property defendant. The Court deems the motion to dismiss submitted by both Maryland Casualty Company and Zurich North America, Inc.

[2] The Florida action was brought only by Action Steel. See Coogler Aff. Ex. H.

2

in Florida alleging fraud, "misplacement of goods" and negligence. See Coogler Aff. Ex. H (attaching complaint). That action resulted in a stipulation of settlement between the parties and the Florida district court entered a final judgment in favor of plaintiff. The judgment remains unsatisfied due to R&R's subsequent dissolution.

**Procedural Background**

On May 27, 2004, plaintiffs filed a complaint against defendants in New York state court asserting two causes of action for breach of contract and bad faith denial of insurance coverage.[3] Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b) based on diversity of citizenship under 28 U.S.C. § 1332.[4] See Coogler Aff. Ex. D (attaching Notice of Removal dated June 30, 2004). By stipulation dated July 14, 2004, plaintiffs consented to removal. See id. Defendants now move for summary judgment.

## DISCUSSION

Federal Rules of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is precluded only where the factual issue is genuine, which means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In

---

[3] The parties stipulated to the dismissal with prejudice of plaintiffs' claim for bad faith denial of insurance coverage. See Coogler Aff. Ex. C (attaching Stipulation of Dismissal dated July 14, 2004).

[4] Plaintiffs are New York corporations. Compl. ¶ 1. Zurich is an Illinois company and Maryland Casualty Company is a Maryland corporation. Id. ¶¶ 3-4.

order to survive a motion for summary judgment, "the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To that end, the non-moving party "may not rest upon the mere allegations or denials" in its pleadings; rather, it "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587.  Guided by these principals, the Court turns to the parties' arguments in this case.

## I. **Whether plaintiffs entrusted the goods to R&R**

This dispute centers on whether the defendants wrongfully denied coverage of plaintiffs' loss under the Policy's entrustment exclusion.  The Policy insures plaintiffs for the loss of personal property, including that which is located at sites other than plaintiffs' primary place of business.  Coogler Aff. Ex. F at Section I.E.  Additionally, the policy excludes certain causes of loss from coverage:

> We will not pay for loss or damage caused by or resulting from any of the following: …. <u>Dishonest or criminal act by you … or anyone to whom you entrust the property for any purpose</u> (a) Acting alone or in collusion with others; or (b) Whether or not occurring during the hours of employment.  (2) This exclusion does not apply to: (a) Acts by "employees" that are covered in Employment Dishonesty Additional Coverage section....

See Coogler Aff. ¶ 8; Ex. F (attaching copy of insurance policy) at Section III.A.2.e.  In a case such as this one, "[o]nce the insured shows that a loss occurred, the insurer shoulders the burden of demonstrating that the loss claimed is excluded expressly from coverage under the policy terms." M.H. Lipiner & Son, Inc. v. Hanover Ins. Co., 869

4

F.2d 685, 687 (2d Cir. 1989). Here, it is undisputed that plaintiffs' steel coils were missing. With respect to the exclusionary clause, as an initial matter, it applies to goods that are "entrusted" to a third party. Plaintiffs do not dispute that their delivery of the steel to R&R constituted entrustment. See generally Pl. 56.1 Statement. Accordingly, that requirement for the application of the exclusion clause is satisfied.

## II.  "Dishonest or Criminal Act"

### A.   Florida Action and Judicial Estoppel

In view of the fact that plaintiffs entrusted the steel to R&R, the Court turns to whether the causes of excludable loss bar plaintiffs from recovering under the Policy. Defendants contend that plaintiffs' loss is excluded from coverage because it resulted from R&R's commission of a criminal or dishonest act. Def. Mem. at 5. In opposition, plaintiffs argue that there is a question of fact as to whether the loss of the steel coils was occasioned by negligence and therefore the exclusion does not apply as a matter of law. See Pl. 56.1 Statement ¶ 1. Defendants contend that the doctrine of judicial estoppel precludes plaintiffs from asserting a position that is inconsistent with the one they adopted in the Florida litigation, namely, that R&R acted fraudulently, and therefore dishonestly, in handling plaintiffs' goods. See Def. Reply Mem. at 6.

According to the equitable doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Judicial estoppel is designed to "protect judicial integrity by avoiding the risk of inconsistent

results in two proceedings." Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997) (citation omitted). A party invoking judicial estoppel must show that "(1) his adversary advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." Wight v. Bank America Corp., 219 F.3d 79, 90 (2d Cir. 2000).[5] Additionally, courts should consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 751.

On May 28, 2004, Action Steel sued R&R in the United States District Court for the Southern District of Florida. See Coogler Aff. Ex. H. In the complaint, Action Steel alleged the facts as described above surrounding the disappearance of the steel, including that it was informed by R&R "that some of Action Steel's steel had been misplaced or inadvertently used." See id. ¶¶ 10-13. Significantly, Action Steel asserted a cause of action against R&R for fraudulent misrepresentation alleging that R&R engaged in "fraudulent behavior" in that it knowingly made false misrepresentations regarding the quantities of steel coils in inventories it provided to Action Steel. Id. ¶¶ 24-27; Coogler Aff. Ex. H.[6]

---

[5] New York also recognizes the doctrine of judicial estoppel. See Prudential Home Mortgage Co. v. Neildan Constr. Corp., 209 A.D.2d 394, 395 (2d Dep't 1994) (applying judicial estoppel to bar party from asserting that mortgage was invalid where, in prior proceeding resulting in judgment in party's favor, he asserted that property was subject to valid mortgage).

[6] In addition to the cause of action for fraudulent misrepresentation, plaintiffs asserted causes of action for "misplacement of goods," negligent misrepresentation and negligent handling of goods in the Florida action. Plaintiffs now misrepresent their claims in that action in arguing that their position has not changed and that the Florida complaint "does not allege that R&R converted" the steel or acted intentionally. Tesser Aff. ¶ 13. Plaintiffs do, however, acknowledge that the Florida complaint "allege[s] that R&R attempted a subsequent cover-up" of the loss of the steel. Id. ¶ 13. Moreover, their cause of action for "misplacement of goods" sounds in conversion, which is the unlawful exercise of dominion and control over the property of another, insofar as it alleges that R&R took possession of the goods, lost the

In this action, plaintiffs adopt the position that the policy exclusion from coverage of losses due to dishonest or criminal acts does not apply to their loss and therefore defendants erroneously denied their claim. Moreover, in opposition to defendants' summary judgment motion, plaintiffs contend that there is a genuine issue of material fact as to whether R&R's negligence caused the loss of the steel. Plaintiffs' position in the Florida action that R&R acted fraudulently is "clearly inconsistent" with their posture in this litigation that the loss of the steel was not caused by dishonesty on the part of R&R or at least that such misconduct is disputed. Thus, the first factor for judicial estoppel is satisfied.

Pursuant to a stipulation between the parties, the Florida district court entered a final judgment dated December 3, 2004 against R&R and ordered it to pay Action Steel $454,738.89 plus prejudgment interest in the amount of $77,617.07, for a total of $532,355.96. See Tessler Aff. Ex. L. That the final judgment was entered pursuant to the parties' stipulation raises the issue, a subject of debate among courts, whether judicial estoppel applies to prior actions that resulted in settlements. In <u>Bates v. Long Island Railroad Co.</u>, the Second Circuit stated, "A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." 997 F.2d 1028, 1038 (2d Cir. 1993) (citations omitted).[7] The Plaintiffs' prior litigation in the

---

steel and demands the fair market value of those goods.

[7] While acknowledging <u>Bates</u>, this Court has stated that the doctrine applies to settlements. <u>Simon v. Safelite Glass Corp.</u>, 943 F. Supp. 261, 269 (E.D.N.Y. 1996) (Glasser, J.) (noting "the fact of settlement rather than judgment is irrelevant" since judicial estoppel is premised on protecting the integrity of the judicial process), <u>aff'd</u> 128 F.3d 68 (2d Cir. 1997).

7

Florida court resulted in a stipulation followed by entry of a final judgment in their favor. Accordingly, Bates compels the conclusion that judicial estoppel does not bar plaintiffs from advancing the position in this litigation that R&R did not act dishonestly with respect to the steel coils.

**B.     Investigation Report and Other Evidence**

In any event, the evidence submitted by defendants establishes that R&R's dishonesty caused the loss. Plaintiffs' own Investigation Report establishes that the loss was caused by dishonesty within the meaning of the policy. See Def. Reply Mem. at 8. That report states that "O'Neil and Valdivia then stated that they took Action Steel's property and used it without Action's knowledge or permission" and describes that act as "unauthorized conversion of Action Steel's property."[8] Coogler Aff. Ex. I at 6-7. Moreover, in defendants' letter dated November 7, 2003 denying plaintiffs' claim, they characterize the event precipitating the loss as a theft by R&R. See Coogler Aff. Ex. B. Plaintiffs do not present evidence to rebut the proof presented by defendants that R&R acted dishonestly or criminally.

This case is analogous to Cougar Sport, Inc. v. Hartford Ins. Co., 737 N.Y.S.2d 770, 771-72 (N.Y. Sup. Ct. 2000), which involved the application of an exclusion clause identical to the one here. Plaintiff, an importer of children's apparel, deposited goods with Yankee Clipper, a warehouse, for temporary storage. Yankee Clipper sold the goods to a salvage company in order to cover plaintiff's arrears. Id. at 772. Defendant insurance company denied plaintiff's claim for the loss and plaintiff brought an action

---

[8] The report prepared by the plaintiffs' investigator is admissible against the plaintiffs as "a statement by a party's agent ... concerning a matter within the scope of the agency ... made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D).

for breach of contract.  Unlike in this case, however, the plaintiff in Cougar conceded that the loss was caused by the "dishonest acts" of the owners of Yankee Clipper.  Id. The court found that because plaintiff entrusted the goods to Yankee Clipper and the theft by that entity constituted a dishonest act within the meaning of the policy, the exclusion barred plaintiff's recovery for its loss as a matter of law.  Id. at 775.  As in Cougar, plaintiffs in this case entrusted the goods to R&R and that entity's dishonest acts in taking the steel without authorization caused the loss.  Cougar supports the conclusion that plaintiffs are precluded from recovering for the loss of the steel under defendants' policy.

Accordingly, the Court finds that plaintiffs entrusted the steel to R&R and that the dishonest acts of that entity caused the loss of the goods.  Therefore, the exclusion clause bars plaintiffs from recovering the value of the lost steel.

### C. Acts of "Employees"

Plaintiffs seek to immunize this loss from the reach of the exclusion clause by arguing that R&R's employees, namely, O'Neil and Valdivia, stole the steel, and that since the goods were entrusted to their employer, R&R, the exclusion does not apply to bar plaintiffs' recovery.  See Pl. Opp. at 4.  In arguing that O'Neil and Valdivia are responsible for the loss of the steel, plaintiffs analogize this case to Facet Industries, Inc. v. Wright, 62 N.Y.2d 769, 770 (1984).  In that case, the parties stipulated to the following facts.  Paul Sergio ("Sergio"), a buyer for International Diamond & Gem ("International"), contacted plaintiff, a jeweler, to obtain merchandise to be sold by International.  Thereafter, plaintiff shipped its loose diamonds to International.  Sergio then stole the diamonds.  Plaintiff filed a proof of loss with defendant insurance

company, which defendant denied on the basis of a policy provision similar to the one in this case that excluded from coverage losses resulting from theft or "other act or omission of a dishonest character ... on the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever." Id. at 770. The court held that the policy "excludes only acts of a person to whom property is delivered or entrusted." Id. at 771. Given the stipulated fact that plaintiff delivered the jewels to International, Sergio was not the "person to whom the property [was] delivered or entrusted" within the language of the policy and therefore his theft of the diamonds was not a covered cause of loss under the policy. Moreover, the court refused to infer from the fact that Sergio was an employee of International that plaintiff entrusted the diamonds to him. Id. Based on those findings, the court held that the exclusion did not apply to bar plaintiff's recovery under the insurance policy. Id. at 772.

While Facet involved an insurance policy exclusion similar to the one at issue here, it is distinguishable from this case. First, there is no evidence that O'Neil and Valdivia were employees of R&R. To the contrary, the evidence establishes that they were principals or managers of that corporation. A sworn statement submitted by O'Neil in the Florida action indicates that he is "the President, Registered Agent, and sole shareholder of R&R Metals, Inc." See Tesser Aff. Ex. K (motion by O'Neil to vacate final default judgment filed in Southern District of Florida); see also Coogler Reply Aff. Ex. M (attaching documents from Florida Department of State indicating that O'Neil is the President of R&R). Similarly, plaintiffs' Investigation Report indicates that O'Neil is the "owner" and Valdivia is the "chief operating manager" of R&R. See Coogler Aff. Ex. I

10

at 2. Moreover, in their memorandum of law plaintiffs acknowledge that O'Neil and Valdivia owned or held management positions at R&R. See Pl. Opp. at 5.[9]

Moreover, plaintiffs present insufficient evidence to raise a genuine issue of material fact as to whether O'Neil and Valdivia caused the loss of the steel in their individual capacities. They rely on the Investigation Report in arguing that O'Neil and Valdivia admitted personal responsibility for the loss. Yet that document does not support this contention. According to the report, O'Neil and Valdivia

> acknowledged there were 'mistakes' and stated they would accept full responsibility and wanted to find a way to reach a settlement. They advised that they would consent to a repayment plan.... Both O'Neil and Valdivia then stated that they took Action Steel's property and used it without Action's knowledge or permission.... [and] admitted that no attempt had been made on the part of R&R to inform Action Steel relating to the unauthorized conversion of Action Steel's property.

Coogler Aff. Ex. I at 5-7 (emphasis added). Contrary to plaintiffs' contention, a reasonable reading of that excerpt compels the conclusion that R&R's President/owner and manager were speaking on behalf of the corporation. Therefore, those statements do not raise a question of fact as to whether O'Neil and Valdivia admitted responsibility for the loss in their individual capacities.[10] Accordingly, because there is no evidence

---

[9] To the extent that the dishonest acts are attributable to the owner of R&R as such, Cougar is instructive in that it found an identical exclusion to be applicable where "the loss was caused by the 'dishonest acts' of the owners of Yankee Clipper." 737 N.Y.S.2d at 772.

[10] According to the Investigation Report, "O'Neil and Valdivia stated that they used the large majority of Action Steel inventory to fill orders for their customers." Coogler Aff. Ex. I at 6. Plaintiffs argue that this raises an issue as to who benefitted – R&R or O'Neil and Valdivia – from the conversion of plaintiffs' steel. This is significant, they contend, with respect to the issue of whether the corporation or the individuals were responsible for the loss. Pl. Opp. at 6. They aver that R&R's subsequent financial infirmity permits the inference that it did not benefit from the use of plaintiffs' steel and instead O'Neil and Valdivia profited because they "sold the steel to their private customers." Tesser Aff. ¶ 11. From that premise, plaintiffs conclude that O'Neil and Valdivia, and not R&R, caused the loss of plaintiffs' property. The Court finds that these conclusory statements (and the absence of any evidence on the issue) are insufficient to raise a genuine issue of material fact as to R&R's responsibility for the loss of the steel.

11

either that O'Neil and Valdivia were employees of R&R or that O'Neil and Valdivia caused the loss of the steel in their individual capacities, Facet does not compel the Court to find that plaintiff is entitled to recover under the Policy.[11]  See also Abrams v. Great Am. Ins. Co., 269 N.Y. 90, 92 (1935) (setting forth rule that exclusion applies where the individual or entity to whom goods are entrusted acts dishonestly or criminally).  Defendants have met their "burden of proving that the loss is within the exclusion of the policy" and thus plaintiffs are precluded from recovering for their loss. See Facet, 62 N.Y.2d at 771.

## CONCLUSION

For the reasons stated above, the Court grants defendants' motion for summary judgment.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: May 10, 2005
      Brooklyn, New York

s/_____
I. Leo Glasser
United States District Judge

---

[11] Plaintiffs argue that the evidence is disputed as to what percentage of the loss was caused by dishonesty on the part of R&R.  See Pl. Opp. at 2, 6.  Additionally, the parties disagree as to the value of the missing steel.  The Investigation Report states that O'Neil valued the missing steel at approximately $200,000 and plaintiffs claim it was worth at least twice that amount.  See Coogler Aff. Ex. I at 5.  The Court finds that these arguments, to the extent they concern damages, are irrelevant to the issue before it, namely, defendants' liability under the insurance policy.

Copies of the foregoing were sent on this day to:

Lewis Tesser
Segal, Tesser & Ryan LLP
509 Madison Avenue
New York, NY 10022

Gil M. Coogler
140 Broadway
36th Floor
New York, NY 10005